IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CYNTHIA ROUTH                                            PLAINTIFF

V.                        NO. 4:09cv00094 JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                              DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Cynthia Routh, seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits. Both parties have submitted briefs (doc. 10, 11). For the reasons that follow, the Court[1] **affirms** the Commissioner's decision that Plaintiff is not entitled to a period of disability or disability insurance benefits.

I.

The Commissioner's denial of benefits must be upheld upon judicial review if the decision is supported by substantial evidence in the record as a whole. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009); *see* 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Wiese*, 552 F.3d at 730. In its review, the Court should consider evidence supporting the Commissioner's decision as well as evidence detracting from it. *Id.* That the Court would have reached a different conclusion is not a sufficient basis for reversal; rather, if it is possible to draw two inconsistent conclusions from the evidence and

---

[1]The parties have consented to the jurisdiction of the United States Magistrate Judge (doc. 5).

one of these conclusions represents the Commissioner's findings, the denial of benefits must be affirmed. *Id.*

II.

In her application documents, Plaintiff alleged inability to work since September 11, 2006, due to migraine headaches, fibromyalgia, osteoporosis, and spinal problems. (Tr. 123.) She was forty-nine years old at the time of the hearing before the ALJ, has a high school education, and has past work as a CNA (certified nursing assistant), a medical administrative assistant, a mortgage clerk, and a home health aide. (Tr. 12-19.)

Under the applicable law, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Basically, those procedures require the ALJ to take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work. *Id.*

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. The ALJ next determined, at step two, that Plaintiff suffered from severe impairments of degenerative disc disorder of the cervical spine,

2

fibromyalgia, osteoporosis, osteoarthritis, and bilateral arthritis of the knees, but that none of her impairments, individually or in combination, equaled a step-three listed impairment as contained in the regulations. At step four, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work with certain restrictions, as follows:

> [S]he can occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. She can sit, stand or walk for six hours out of an eight hour work day. However, secondary to falling, she cannot climb scaffolds, ladders and ropes. Secondary to pain, she can only occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel, and balance. She cannot work at unprotected heights or around dangerous equipment. She cannot perform sustained driving. Secondary to hip pain and falling, she must avoid walking on uneven surfaces.

The ALJ found that Plaintiff would not be able to return to her past relevant work as a home health aide or a nurse assistant, but that her past work as a medical administrative assistant or mortgage clerk would not require the performance of work-related activities precluded by her RFC. The ALJ thus concluded that Plaintiff was not under a disability during the applicable time period, September 11, 2006, to December 15, 2008, ending her analysis at step four. (Tr. 43-50.) Plaintiff pursued administrative review with no success, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5.)

Plaintiff argues: (1) the ALJ's finding that her migraine headaches do not constitute a severe impairment is not supported by substantial evidence in the record; and (2) the ALJ's credibility findings are not supported by the record.

III.

An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities.[2] 20 C.F.R. § 404.1521(a). An impairment is not severe when it amounts only to a slight abnormality which would have no more than a minimal effect on an individual's ability to work. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The claimant bears the step-two burden of establishing that an impairment is severe. *Id.* at 707-08. "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard," and the Eighth Circuit has upheld on numerous occasions the Commissioner's finding that a claimant failed to make the necessary showing. *Id.* at 708 (citations omitted).

Here, the ALJ set forth the applicable law regarding the step-two severity determination (Tr. 44), then expressly found that Plaintiff's migraine headaches "have no more than a minimal effect" on her ability to do basic work activities and are therefore "non-severe" (Tr. 45). The ALJ thoroughly discussed Plaintiff's history of treatment for migraine headaches (Tr. 47-48); noted her testimony that she experiences "a headache of some degree every day" (Tr. 48) and her report to a doctor in 2006 that she had experienced headaches for at least thirty years (Tr. 47); and observed that she reported in July 2008 that the migraine headaches were "much improved after treatment (Tr. 48).

Substantial evidence in the record supports the ALJ's findings.

---

[2] Basic work activities are the "abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, as well as capacities for seeing, hearing, speaking, understanding and carrying out simple instructions, using judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

4

Most of the supporting medical records cited by Plaintiff document her complaints and treatment for migraine headaches by her medical providers from 2005 through July 2006 (doc. 10, at 16-17), which predate her onset date of September 11, 2006. While evidence concerning ailments outside the relevant time period can support or elucidate the severity of a condition, it cannot serve as the only support for a claim of disability. *Pyland v. Apfel*, 149 F.3d 873, 876-78 (8th Cir. 1998).

More relevant here is Plaintiff's treatment, and lack of treatment, from August 2006 forward. From August to November 2006, she was evaluated and treated by Lawrence C. Ault III, M.D., at Arkansas Pain Medicine, for severe cervical pain radiating into her head. She underwent two cervical epidural steroid injections, as well as a cervical facet joint injection and destruction of the paravertebral facet joint nerves. (Tr. 227-43.) On November 7, 2006, Dr. Ault's treatment notes show that her pain decreased and her range of motion improved with physical therapy, and that the occurrence of occipital headaches was less frequent. (Tr. 236.) During the course of receiving treatment at Arkansas Pain Medicine, she had expressed dissatisfaction to her regular physician about Dr. Ault and the lack of results; however, following the last visit, she voiced no further complaints. (Tr. 244-45.) On November 10, she sought a refill on her "routine" pain medications and it was noted that she had not kept an appointment with her neurologist. She reported that her husband might have lost his job. (Tr. 244.)

There is no record of any medical treatment from November 2006 through July 2008 for migraine headaches or any other conditions. Plaintiff asserts that, during this time, her husband was unemployed and they had no medical insurance. On July 7, 2008, she was seen by Dr. Melissa Seme at a family health clinic to establish care since her husband had

5

gotten a job. She presented with complaints of trouble with her legs, stomach and neck. She told Dr. Seme that she had "not been doing much for her medical conditions except for intermittent trips to the emergency room" and had been sick for two weeks in 2008, which led to a diagnosis of diverticulitis. (No such emergency room visits are documented.) Plaintiff also reported a long history of migraines but said that, instead of weekly migraines, she had suffered only four to five migraines over the past couple of months and had gone six months without a migraine following Dr. Ault's last procedure. She said she had frequent "dull headaches" and asked for something to help when they became severe. Dr. Seme prescribed Mepergan Fortis "to use very sparingly for the migraines." (Tr. 272-74.)

This record demonstrates that, although Plaintiff had a long history of migraine headaches, her condition had responded to treatment, she did not seek any regular or emergency room treatment for headaches for twenty-one months, and when she sought care in July 2008, she did not identify migraine headaches as a primary complaint. Before her alleged onset date, Plaintiff had been able to work for many years despite her long-standing problem with migraine headaches. This further supports the ALJ's determination that, after her alleged onset date, her migraine headaches did not significantly limit her ability to perform basic work activities. *See Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (claimant's ability to work in the past with alleged impairments demonstrates they are not presently disabling); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (claimant's ability to work "over the years" with chronic headaches and fatigue provided support for ALJ's determination to reject as a basis for disability); *Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998) (migraine headaches not disabling where controlled by treatment).

In any event, the ALJ did not totally disregard Plaintiff's complaints of frequent headaches. The ALJ found that Plaintiff had a severe impairment of degenerative disc disorder of the cervical spine, which was found to be the cause of chronic neck pain described by Plaintiff as "radiating into her head." (Tr. 233, 239.) Dr. Ault's treatment of her cervical pain resulted in reduced frequency of headaches. (Tr. 236, 272.) In setting forth the applicable law regarding the RFC determination, the ALJ stated that she was considering all of Plaintiff's impairments, including those that were not severe. (Tr. 44.) Under these circumstances, Plaintiff has not met her burden of showing the existence of a separate severe impairment of migraine headaches, and substantial evidence in the record supports the Commissioner's step-two finding.

IV.

Plaintiff testified before the ALJ that she has problems with her neck and shoulders three to four times a month, has trouble sleeping, has daily headaches, and experiences pain in her knees and hips daily. She said that usually the headaches are "routine," but when she has a migraine, she has to go to a completely quiet, dark room. She said she had fallen five or six times in the past four months because her legs "just give out" while walking. She said that, since she has started falling, she stays with her mother-in-law during the daytime. She said she could stand for thirty to thirty-five minutes, and could sit for twenty to thirty minutes before needing to get up. She said she walks with a limp because of her right hip. She said she has good days and bad days, rating her pain level on the good days at a six on a scale of one to ten ("but only for ... a couple of hours, [then] it's all downhill from there"), and on bad days as a ten. She said she spends most of the

7

day in bed, but is able to dress herself and prepare easy meals. She said she has no activities outside the home other than sometimes going out to eat with her husband, but visits with family members who come to their home on weekends. (Tr. 19-34.)

In her disability application forms, Plaintiff reported that she has pain in her "whole body" every day and "every muscle and joint in [her] body hurts." (Tr. 131.) She reported that, on a good day, she is able to do a load or two of laundry, do the dishes and take a bath, but that her husband does 95% of the cooking and cleaning. She said she can fold clothes and prepare her own meals, but usually waits for her husband to get home to cook. She said she is able to drive and ride in a car, goes outside once a day, goes to the grocery store about twice a month, and goes to doctor's appointments one or two times a month. She said her migraine medication affects her memory, but she enjoys reading, visits with others on the phone, is able to pay attention for "short periods of time," can follow written and spoken instructions, can get along with others, and is able to deal with changes in routine. (Tr. 133-39.)

After considering and weighing the evidence in the record, the ALJ concluded that Plaintiff's allegations regarding her limitations were "not entirely credible." In support, the ALJ pointed to: (1) Plaintiff's failure to complete a prescribed regimen of physical therapy; (2) her failure to seek any medical treatment at the emergency room or from any other source during 2007; (3) her report to Dr. Seme in July 2008 that her headaches and cervical spine pain were much improved after treatment; (4) her failure to present any specific complaints to Dr. Seme; (5) her hearing testimony regarding suicidal ideation, even though she had made no previous allegations of any mental disorder and had received no medication or other treatment for depression; (6) evidence of only mild limitations in her

8

activities of daily living, social functioning, concentration, persistence and pace, with no episodes of decompensation; and (7) the inconsistency of her statements and testimony with the medical evidence of record. (Tr. 47-49.)

A claimant's subjective complaints may be discounted if they are inconsistent with the evidence as a whole. *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007). The ALJ is in the best position to gauge credibility and is granted deference in that regard as long as he explicitly discredits a claimant's subjective testimony and gives good reasons for doing so. *Id.* at 696. The Social Security regulations and rulings identify a number of factors for the ALJ to consider in assessing credibility, most of which were set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). *See* 20 C.F.R. § 404.1529(c);[3] Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3, *5 (S.S.A. 1996). However, an ALJ need only acknowledge and consider these factors, and need not explicitly discuss each one. *Wildman v. Astrue*, No. 09-1521, 2010 WL 760240, *7 (8th Cir. Mar. 8, 2010). Nor is an ALJ required to discuss "every piece of evidence submitted," and his failure to cite specific evidence does not mean that it was not considered. *Id.* at *5.

Here, the ALJ stated she was considering Plaintiff's statements and testimony based on the requirements of § 404.1529 and SSR 96-7p (Tr. 46, 49), explicitly discredited Plaintiff's credibility (Tr. 47, 49), and gave several reasons for doing so (Tr. 47-49).

---

[1]As stated in this regulation, the ALJ is required to consider, in addition to the objective medical evidence and the claimant's prior work record, statements and observations made by the claimant, his or her medical providers and any others regarding (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medications, (5) non-medication treatments or other measures taken to alleviate pain and symptoms, and (6) functional limitations.

9

Plaintiff first argues that the ALJ improperly discounted her credibility due to a failure to complete physical therapy when the cessation was because the therapy was not helping her pain. The record shows the following. Upon referral from Plaintiff's regular physician in July 2006 for headaches and neck pain, a neurologist recommended aerobic exercise and a trial of physical therapy. (Tr. 249-51.) Upon initial evaluation, the therapist assessed that Plaintiff would benefit from skilled physical therapy to decrease her pain and increase her range of motion, and had "good potential to meet rehab goals." (Tr. 192.) Plaintiff attended five therapy sessions and achieved one of three goals, but then but did not return for her remaining seven visits. (Tr. 191, 193-94.) At the second and third sessions, she reported markedly reduced pain, but at the last two sessions, reported that her pain had returned. (Tr. 193.) On July 18, 2006, the day after her last session, she told her rheumatologist that the therapy provided "limited improvement of symptoms" and sometimes increased headaches. (Tr. 177-78.) In August 2006, she began going to Dr. Ault, a pain management specialist, and, in September 2006, he also recommended exercise and physical therapy. (Tr. 238.) In October 2006, Dr. Ault again advised her to continue physical therapy and increase her activity level. (Tr. 237.) On November 7, 2006, his treatment notes indicate that Plaintiff's pain had decreased and her range of motion had improved with physical therapy, and he again advised her to pursue therapy, increase activity, and exercise. (Tr. 236.) Nothing shows that she pursued further physical therapy.

In light of this record, the ALJ properly discounted Plaintiff's credibility for failing to follow through with her doctors' recommended course of treatment. *See Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (adverse credibility finding supported by claimant's failure to attend recommended therapy appointments); *Baker v. Barnhart*, 457 F.3d 882,

10

893-94 & n.7 (8th Cir. 2006) (claimant's decision not to undertake recommended physical therapy was valid factor in credibility determination); *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (noncompliance with a physician's directions or prescribed treatment is a valid reason to discredit a claimant's subjective allegations); 20 C.F.R. § 404.1530(a-b) (failure to follow a prescribed course of treatment without good reason precludes a finding of disability).

Second, Plaintiff says the ALJ improperly considered her failure to receive medical treatment during a time that she had no health insurance. In assessing credibility, an ALJ must not draw any adverse inferences about a claimant's symptoms and their functional effects from a failure to pursue regular medical treatment without first considering whether the failure was caused by the claimant's inability to afford treatment or obtain access to free or low-cost medical services. SSR 96-7p, *supra* at *7-*8.

During Plaintiff's hearing, the ALJ asked her about the lack of insurance several times (Tr. 20, 21, 22) and asked whether she had looked into purchasing "cheaper medications that are available under some special programs" (Tr. 22). In her decision, the ALJ specifically noted that Plaintiff had no medical insurance during 2007, that her "regular doctor visits stopped," and that she "sought no medical treatment at the emergency room or from any other source" in 2007. (Tr. 48.) The records also show Plaintiff's 2008 report that, while she was without insurance, she had "not been doing much for her medical conditions except for intermittent trips to the emergency room," but they do not document any such emergency room visits. (Tr. 272.)

This record shows that the ALJ adequately explored Plaintiff's claim of financial hardship. There is no evidence that Plaintiff investigated community resources for

11

obtaining low-cost medical care, that she was ever denied any medical treatment for her conditions due to poverty or lack of insurance, or that she was prevented from seeking such treatment for any other reason. *See Goff*, 421 F.3d at 793 (failure to take prescription pain medication was relevant to credibility determination where claimant said she could not afford treatment but there was no evidence she was ever denied medical treatment due to financial reasons); *Harris*, 356 F.3d at 930 (permissible for ALJ to consider lack of evidence that claimant sought out stronger pain treatment available to indigents for her allegedly debilitating headaches); *Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003) ("lack of insurance" did not excuse claimant's failure to pursue mental health treatment where no evidence that claimant was ever denied such treatment because of insufficient funds or insurance). Therefore, Plaintiff's lack of insurance did not wholly excuse her failure to seek treatment for her allegedly disabling impairments for twenty-one months, and the ALJ did not err in considering this factor in the credibility analysis.

Next, Plaintiff suggests that the ALJ gave undue weight to Plaintiff's 2008 report to Dr. Seme that her condition had improved, when the record also showed that Plaintiff's pain and other symptoms had not resolved and that Dr. Seme continued to prescribe medications and recommended further lab tests. The ALJ did note Plaintiff's report to Dr. Seme that her hips and back were not holding her, as well as the fact that Dr. Seme diagnosed migraine headaches, osteoporosis, and spinal arthritis, and prescribed medication. (Tr. 48; *see* Tr. 272-73.) As stated, the ALJ is not required to address every piece of evidence in the record, and the failure to cite specific evidence does not mean it was not considered. *Wildman*, *supra* at *5. Furthermore, the ALJ's specific references to Dr. Seme's treatment notes indicates that all parts of those notes were considered but that

the parts now cited by Plaintiff were found to be outweighed by other evidence in the record and, therefore, not critical to the disability decision. *See id.* (given the ALJ's specific references to particular findings of doctor, it is "highly unlikely that the ALJ did not consider and reject" the statements at issue); *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (where ALJ explicitly relied on certain findings from physician, his failure to cite other findings does not mean he ignored them).

Next, Plaintiff argues that her "meager" daily activities do not justify discrediting her testimony. The ALJ stated that she had reviewed all of Plaintiff's written reports regarding her activities and abilities (Tr. 22-23), the ALJ and Plaintiff's attorney carefully questioned Plaintiff at the hearing about her daily activities and functional limitations (Tr. 21-34), and the ALJ's written decision discussed Plaintiff's reports and testimony regarding the limited extent of her activities (Tr. 48-49).

The extent of a claimant's daily activities is a proper consideration in evaluating the credibility of her subjective complaints and in determining functional restrictions imposed by her impairments. *See, e.g., Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009); *Harris*, 356 F.3d at 930 (claimant's daily activities were inconsistent with claim of debilitating headaches and fatigue); *McGinnis v. Chater*, 74 F.3d 873, 875 (8th Cir. 1996) (claimant's daily activities "on her good days" were inconsistent with disabling headache pain, where claimant alleged an average of four migraines per month but sometimes went an entire month without one). It is significant that such a substantial restriction of Plaintiff's activities was not imposed by her physicians and that, in fact, her neurologist and her pain management physician repeatedly recommended that she exercise and increase her activity level. (Tr. 236-38, 251.) *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)

13

(treating physicians' recommendations for increased physical exercise are inconsistent with claim of disability); *Blakeman v. Astrue*, 509 F.3d 878, 883 (8th Cir. 2007) (doctor's advice to become more physically active was inconsistent with subjective allegations of disabling fatigue). Furthermore, the ALJ accounted for some of Plaintiff's alleged functional limitations by including certain restrictions in her RFC, *i.e.*, limiting her to the lifting/carrying and walking/standing/sitting requirements of light work; restricting her from climbing scaffolds, ladders and ropes; restricting her to occasional climbing of ramps and stairs, as well as occasional stooping, bending, crouching, crawling, kneeling and balancing; and restricting her from working at unprotected heights, around dangerous equipment, sustained driving, and walking on uneven surfaces. (Tr. 46.)

Finally, Plaintiff asserts that the ALJ erred in failing to consider her consistent work record in the credibility analysis. Although the ALJ did not specifically state that she was considering Plaintiff's past work record, she said she had evaluated credibility based "on the entire case record" (Tr. 46) and in accordance with 20 C.F.R. § 404.1529 and SSR 96-7p (Tr. 46, 49), which specifically include work record as a factor. The ALJ was obviously aware of Plaintiff's work history, as she questioned Plaintiff and the vocational expert extensively at the hearing and included in her decision a lengthy discussion of Plaintiff's past relevant work, the types of jobs she performed, and the length of time she performed them. (Tr. 12-19, 34-36, 49-50.) This indicates that the ALJ considered Plaintiff's work history and took it into account in making her overall decision, including her credibility determination. Furthermore, while a consistent work record can enhance a claimant's credibility, it can also demonstrate an ability to continue performing work activities in spite of long-standing impairments, such as those alleged by this Plaintiff. *See Roberson v.*

14

*Astrue*, 481 F.3d 1020, 1025-26 (8th Cir. 2007); *Goff*, 421 F.3d at 792-93. Therefore, this factor does not necessarily weigh in Plaintiff's favor in the credibility analysis.

The ALJ's credibility analysis substantively and adequately covered the relevant considerations, and she provided good reasons supported by substantial evidence for not fully accepting Plaintiff's subjective complaints. While there is evidence in the record both supporting and detracting from the ALJ's conclusion that Plaintiff was not credible, the ALJ was able to observe Plaintiff during her testimony at the hearing and this, in addition to the medical and other evidence in the record, convinced the ALJ that she was not fully credible. Under these circumstances, the ALJ was in the best position to make a credibility determination, and the Court will defer to that determination. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

V.

After a careful review of the evidence and all arguments presented, the Court finds that Plaintiff's arguments for reversal are without merit and that the record as a whole contains substantial evidence upon which the ALJ could rely in reaching her decision.

ACCORDINGLY, the final decision of the Commissioner is **affirmed** and Plaintiff's case is **dismissed** with prejudice.

IT IS SO ORDERED this 18th day of March, 2010.

_____
UNITED STATES MAGISTRATE JUDGE